UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * * * * | |
| v. | * * | Criminal Action No. 20-cr-10245-ADB |
| ROTCHILL SEME, | * * | |
| Defendant. | * * | |

**MEMORANDUM AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Currently pending before the Court is Defendant Rotchill Seme's motion to dismiss the indictment because the government failed to preserve exculpatory evidence. [ECF No. 74]. For the reasons set forth below, the motion is DENIED.

I. BACKGROUND

On October 22, 2020, the grand jury returned an indictment charging Mr. Seme with one count of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). [ECF No. 11 at 1]. The charges against Mr. Seme are the result of a joint task force investigation that was targeting firearms sales in Southeastern Massachusetts. See [ECF No. 1-1 ¶ 1].

On May 25, 2020, Task Force Officer Sean Healy ("TFO Healy") used an account named "Java Stacks" to post a photograph of a firearm to Snapchat. [ECF No. 1-1 ¶ 7; ECF No. 74-4 ¶¶ 3–4]. The Java Stacks account did not identify TFO Healy as its owner. [ECF No. 74-4 ¶ 4]. After viewing the photograph, Mr. Seme contacted the Java Stacks account. [ECF No. 1-1 ¶ 7; ECF No. 74-4 ¶¶ 3–5]. TFO Healy, using the Java Stacks account, responded to Mr. Seme's message, and the two exchanged a few more messages via Snapchat. [ECF No. 74-4 ¶¶ 5–10].

These initial Snapchat messages have since been deleted because Snapchat's "servers are designed to automatically delete one-to-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen." [ECF No. 74-1 at 7]. Although Snapchat automatically deletes them, Mr. Seme notes that a Snapchat user can take affirmative steps to save one-to-one chats by: (1) "pressing and holding the message" in the Snapchat application; (2) taking a screenshot of the message using their device's screenshot function; or (3) taking a photograph of the message using an external camera. [ECF No. 74 at 3]. In this case, however, the parties agree that neither Mr. Seme nor the government used these methods to preserve a copy of the initial messages. [Id. at 2; ECF No. 78 at 2].

Although neither party has a copy of the initial Snapchat messages, Mr. Seme, via his declaration, has reconstructed the exchange based on his recollection. [ECF No. 74-4]. Mr. Seme contends that his first message asked, in essence, "[w]hat is that?" [Id. ¶ 5]. TFO Healy responded that "[i]t's a 9mm. $700." [Id. ¶ 6]. Mr. Seme replied "[n]ah, I'm good. I never said I wanted it." [Id. ¶ 7]. TFO Healy followed up with "[y]ou sure? It's clean. Or I might have something else you might want." [Id. ¶ 8]. Mr. Seme reiterated that he was not interested by saying "I'm straight." [Id. ¶ 9]. TFO Healy then stated that "[m]y people have connections in Maine" and gave him a phone number for Special Agent Brian Higgins ("SA Higgins"), who was working undercover and posing as a firearms dealer. [Id. ¶ 10; ECF No. 1-1 ¶ 7].

Later that same day, Mr. Seme called SA Higgins and, when he did not answer, also sent him a text message. [ECF No. 1-1 ¶ 8]. Mr. Seme and SA Higgins, who was still posing as a firearms seller, exchanged text messages discussing Mr. Seme's desire to purchase several guns. [Id.]. Mr. Seme and SA Higgins met in person on May 27, 2020 to further discuss a potential

firearms transaction. [Id. ¶ 9]. After the first meeting, Mr. Seme and SA Higgins continued to exchange text messages, and Mr. Seme ultimately agreed to pay SA Higgins $3,500.00 for six handguns. [Id. ¶ 10].

On June 3, 2020, Mr. Seme and SA Higgins met in person in Brockton, Massachusetts. [ECF No. 1-1 ¶ 11]. During this meeting, which took place in SA Higgins' car, Mr. Seme inspected and purchased the six firearms. [Id.]. After the purchase, SA Higgins got out of the car under the guise of retrieving ammunition from the trunk. [Id.]. At that point, law enforcement approached the vehicle and eventually arrested Mr. Seme. [Id. ¶¶ 12–15].

On September 24, 2021, Mr. Seme filed his motion to dismiss. [ECF No. 74]. The government opposed on October 15, 2021, [ECF No. 78], and Mr. Seme replied on October 20, 2021, [ECF No. 81].

II.   **LEGAL STANDARD**

"It is axiomatic that . . . a defendant has a due process right to request and receive evidence that the government possesses which is material to his guilt or punishment." Olszewski v. Spencer, 466 F.3d 47, 55 (1st Cir. 2006) (quoting United States v. Femia, 9 F.3d 990, 993 (1st Cir. 1993)). Thus, a failure on the part of the government to preserve exculpatory evidence that was in its possession may give rise to a due process violation. See id. (discussing the framework for "address[ing] the problem of the loss or destruction of evidence by the prosecution"). When deciding whether a due process violation has occurred, the Court must first determine if the destroyed evidence was apparently or potentially exculpatory. Id. at 56. Evidence is "apparently exculpatory" if the exculpatory value of the evidence was apparent "*before* it [was] lost or destroyed." Id. (citing Arizona v. Youngblood, 488 U.S. 51, 56 (1988)). If the evidence was apparently exculpatory, the defendant need not show that the government acted in bad faith in

order to establish a due process violation.  See Youngblood, 488 U.S. at 57 ("The Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence.").  If, on the other hand, the destroyed evidence was only potentially exculpatory or potentially useful, then the defendant is required to show that the government acted in bad faith.  United States v. Garza, 435 F.3d 73, 75 (1st Cir. 2006).  Regardless of the evidence's exculpatory value, the destroyed evidence must also be irreplaceable.  Olszewski, 466 F.3d at 58.

### III. DISCUSSION

Mr. Seme argues that dismissal is warranted because the initial Snapchat messages were apparently exculpatory and irreplaceable.  [ECF No. 74 at 5].  And, even if those messages were only potentially exculpatory, dismissal is still proper because the government acted in bad faith.  [Id.].  The government contends that, even accepting Mr. Seme's recollection of the initial Snapchat messages as true, the messages were at most potentially exculpatory, there was no bad faith, and the case law does not support the extreme remedy of dismissal.  [ECF No. 78 at 6–12].

#### A. Exculpatory Value of the Initial Snapchat Messages

To determine the exculpatory value of the initial Snapchat messages, the Court must consider the purpose for which Mr. Seme intended to use them.  Mr. Seme asserts that the Snapchat messages go directly to his ability to mount an entrapment defense.  [ECF No. 74 at 5].

##### 1. Legal Framework for the Entrapment Defense

"Entrapment provides a defense if law enforcement officers 'originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute.'"  United States v. Pérez-Rodríguez, 13 F.4th 1, 17 (1st Cir. 2021) (quoting Jacobson v. United States, 503 U.S. 540, 548

4

(1992)). The entrapment "defense has two prongs: (1) improper government inducement and (2) the defendant's lack of predisposition to commit the offense charged." Id. Under the first prong, inducement "occurs when law enforcement agents engage in conduct of the type that would cause a person not otherwise predisposed to commit a crime to do so." Id. (internal quotation marks and citation omitted). Merely creating an opportunity through a government "sting" operation is not sufficient to show inducement. Id. Instead, inducement requires that the government present an opportunity to commit the offense and that there also be a "plus factor," such as "intimidation and threats, dogged insistence, playing on the defendant's sympathies, [or] repeated suggestions." Id. (internal quotation marks and citation omitted).

Under the second prong, predisposition "turns on whether the 'defendant was disposed to commit the criminal act prior to first being approached by Government agents.'" Pérez-Rodríguez, 13 F.4th at 17–18 (internal quotation marks and citation omitted). Courts consider the following factors when evaluating predisposition:

> (1) the character or reputation of the defendant; (2) whether the initial suggestion of criminal activity was made by the Government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant showed reluctance to commit the offense, which was overcome by the governmental persuasion; and (5) the nature of the inducement or persuasion offered by the Government.

Id. at 18 (quoting United States v. Gamache, 156 F.3d 1, 9–10 (1st Cir. 1998)).

2. Applying the Framework to This Case

Mr. Seme argues that the initial Snapchat messages satisfy his burden as to both prongs of the entrapment defense, and thus their exculpatory value was apparent to the government. [ECF No. 74 at 6].

Mr. Seme first contends that the initial Snapchat messages show that he was improperly induced by the government's repeated suggestions that he purchase firearms. [ECF No. 74 at 7].

5

The government counters that TFO Healy's messages do not rise to the level of improper inducement and were therefore not apparently exculpatory at the time that they were destroyed. [ECF No. 78 at 6].  Taking the statements in his declaration as true, at most, Mr. Seme has demonstrated that he contacted TFO Healy after viewing the photograph of the gun, and that TFO Healy then solicited him several times to purchase a firearm.  [ECF No. 74-4 ¶¶ 2–10]. "[M]ultiple solicitations of a defendant[, however,] do not necessarily equal improper inducement."  United States v. Dávila-Nieves, 670 F.3d 1, 10 (1st Cir. 2012); see also United States v. Teleguz, 492 F.3d 80, 84 (1st Cir. 2007) ("Nonetheless, merely giving a defendant an opportunity to commit a crime when the government puts forth an enthusiastic and persistent buyer of illicit goods cannot be improper inducement.").

Although Mr. Seme is correct that "repeated suggestions" can be evidence of improper inducement, the facts of this case are distinguishable from the cases that he cites in support.  In Pérez-Rodríguez, the defendant argued that the government improperly induced him to solicit a minor for unlawful sexual activity when a government agent sent him multiple messages offering to arrange a sexual encounter between the defendant and a minor.  13 F.4th at 9, 20.  The First Circuit reviewed the government's messages to the defendant and held that a reasonable jury could have found improper inducement because the government made repeated suggestions that downplayed the harm of child sexual abuse and even suggested that it could be beneficial to the minor.  Id. at 20–21.  In United States. v. Gendron, the First Circuit listed instances of improper inducement, which included circumstances where the government "used 'repeated suggestions' which succeeded only when [the] defendant had lost his job and needed money for his family's food and rent."  18 F.3d 955, 961 (1st Cir. 1994) (quoting United States v. Kessee, 992 F.2d

6

1001, 1003 (9th Cir. 1993)).  In both of these cases, the government's repeated suggestions did more than simply present opportunities to commit the offense.

Here, in contrast to Pérez-Rodríguez and Gendron, TFO Healy's initial communications did not suggest that buying firearms would be beneficial or legal, and he did not play on Mr. Seme's financial or personal circumstances.  Instead, the messages merely presented Mr. Seme with opportunities to purchase a firearm.  On these facts, it is not apparent that the initial Snapchat messages transformed a permissible sting operation into improper inducement.

Mr. Seme next argues that the initial Snapchat messages are relevant to the "lack of predisposition" prong (and are therefore apparently exculpatory) because they show that the government suggested the criminal activity, that he was reluctant to buy the firearms, and that the government made repeated suggestions.  [ECF No. 74 at 7–8].  Although the initial Snapchat messages could have been relevant to the predisposition analysis, significant other evidence in the record weighs against a finding that Mr. Seme lacked the predisposition to purchase firearms.  For example, Mr. Seme indicated to SA Higgins that he had experience buying and selling guns by stating that he was "from the streets," [ECF No. 78-1 at 12], that "this is what [he] do[es]," [id.], and that he was looking for a "regular" supply, [id. at 11].  It is also undisputed that Mr. Seme initiated the contact with the Java Stacks Snapchat account by inquiring about the gun. [ECF No. 74-4 ¶ 5].  Further, upon receiving SA Higgins' phone number, Mr. Seme called and texted the number without any further suggestion or pressure from TFO Healy.  [ECF No. 1-1 ¶ 8].  Separately contacting SA Higgins after disengaging with TFO Healy is particularly indicative of a predisposition, rather than a lack of predisposition, to commit the offense.  See United States v. Montoya, 844 F.3d 63, 69 (1st Cir. 2016) (finding that defendant's initiation of

contact with a cooperating witness for the purpose of selling drugs was "indicia of predisposition, not indicia of a lack of predisposition").

In sum, as an initial matter, even assuming Mr. Seme's version of the Snapchat messages is true, it is highly unlikely that he has a valid entrapment defense. For present purposes, given that TFO Healy's initial messages to Mr. Seme, as recounted by Mr. Seme, did not clearly rise to the level of improper inducement and the significant other evidence in the record that weighs against a lack of predisposition, the exculpatory value of the initial Snapchat messages was not apparent before they were deleted (or now).

**B.   Bad Faith**

Because the messages are, at most, potentially exculpatory, Mr. Seme must demonstrate bad faith in order to establish a due process violation. See Garza, 435 F.3d at 75. To show bad faith, a defendant must put forth "independent evidence that the [government] was somehow improperly motivated." Id. (alteration in original) (citation omitted). Negligence or short-sightedness on the part of law enforcement is insufficient. Id.

Mr. Seme has failed to show that the government acted in bad faith because the evidence he points to does not demonstrate that the government was improperly motivated. Mr. Seme relies on the following facts to support his bad faith argument: (1) the government instigated this operation and knew that Snapchat messages automatically delete; (2) the government preserved other evidence from Snapchat, which demonstrates that it knew how to preserve these messages when it had wanted to do so; and (3) the government would have known the value of the messages at the moment that they were sent. [ECF No. 74 at 10–12]. At most, the record reflects negligence and short-sightedness on the part of TFO Healy, who failed to save messages

8

when using a platform that automatically deletes them. This short-sightedness, however, does not amount to bad faith. See Garza, 435 F.3d at 75.

### C.       Irreplaceability

Even if the Court were to find that the evidence was apparently exculpatory or that the government acted in bad faith, Mr. Seme has not shown that the initial Snapchat messages are irreplaceable. Evidence is irreplaceable when a defendant is "unable to recreate the substance of" the destroyed evidence "by other reasonably available means." Olszewski, 466 F.3d at 53, 58–59. Mr. Seme "bears the burden of showing that the evidence [is] irreplaceable." Id. at 58.

Here, Mr. Seme has not met his burden on irreplaceability because the substance of the initial Snapchat messages can be recreated through other reasonably available means. Although not entirely clear from the briefing, the government appears to accept Mr. Seme's recollection of the initial Snapchat messages, which indicates that the parties could possibly stipulate to the initial messages' contents. [ECF No. 78 at 12 (government's brief stating "[Mr. Seme] has recreated his unpreserved communications with TFO Healy, and the government has accepted them as accurate")]. The Court disagrees that the jury needs to see the actual Snapchat messages to get a "complete picture," [ECF No. 74 at 9], particularly where the government is willing to accept the version put forward by Mr. Seme. Given that the substance of the messages is not disputed, this evidence can be presented to the jury in a number of ways, including by stipulation or through testimony.

With regard to such testimony, even assuming that Mr. Seme elects not to testify, there is nothing in the record to suggest that Mr. Seme cannot call TFO Healy to testify about the initial messages. Mr. Seme argues, without any evidence in support, that this is insufficient because TFO Healy is a government agent who "likely will not recall the messages precisely." [ECF No.

9

74 at 9]. The First Circuit has previously recognized that examining a hostile witness can allow a defendant to recreate lost or destroyed evidence, see Olszewski, 466 F.3d at 59, and, in the absence of any additional evidence to show that TFO Healy's testimony would be inadequate, the Court declines to find that his examination would be insufficient.

### IV.    CONCLUSION

Accordingly, Mr. Seme's motion to dismiss, [ECF No. 74], is DENIED.

**SO ORDERED.**

November 3, 2021                                        /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE